UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:06-CV-134 CAS |
| | ) |
| FLOYD EDWARD VANDERHOOF, JR., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion for summary judgment by plaintiffs Monsanto Company and Monsanto Technology LLC ("Monsanto" or "plaintiffs"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Floyd Edward Vanderhoof, Jr. ("defendant" or "Vanderhoof") opposes the motion. For the following reasons the Court will grant the motion for summary judgment in part.

**Background**

Monsanto filed this action pursuant to 35 U.S.C. § 271, asserting claims of patent infringement (Count I), conversion (Count II), unjust enrichment (Count III), and breach of contract (Count IV) against defendant. Monsanto is in the business of developing, manufacturing, licensing, and selling agricultural biotechnology, agricultural chemicals, and other agricultural products. Monsanto alleges that Vanderhoof, a commercial farmer, violated United States Patent No. 5,352,605 ("the '605 Patent") when he planted unlicensed patented second-generation Roundup Ready® soybean seed in 2004 and 2005.

Monsanto moves for summary judgment on Counts I and IV, alleging that it is undisputed that Vanderhoof planted unlicensed patented second-generation Roundup Ready® soybean seed in 2004

and 2005 in violation of its patent rights and in breach of the contract defendant entered into with Monsanto. In addition, Monsanto seeks a finding that defendant's alleged infringement was willful as there is no material dispute that defendant did not have a reasonable basis to believe his actions did not violate Monsanto's patent rights. Monsanto also argues that pursuant to the terms of the contract at issue in this action, it is entitled to its attorneys' fees and costs.

**Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

**Facts**

Monsanto Company is a company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri. Monsanto Company is authorized to do and is doing business in Missouri and in this judicial district. Monsanto Company is in the business of developing, manufacturing, licensing and selling agricultural biotechnology, agricultural chemicals and other agricultural products. Monsanto Technology LLC is a company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri. Monsanto Technology LLC is authorized to do and is doing business in Missouri and in this judicial district. Defendant Floyd Edward Vanderhoof, Jr. is a resident and domiciliary of Shiawassee County, Michigan, and is engaged in a farming business that involves the planting of crops, including soybeans.

Monsanto developed a plant biotechnology that involves the transfer into crop seed of a gene that causes such seed to be resistant to Roundup® branded herbicides. Roundup® is a non-selective herbicide manufactured by Monsanto, which causes severe injury or crop destruction to soybean

varieties that are not Roundup Ready®. This technology has been utilized in several agricultural crops, including soybeans. The genetically improved seeds are marketed by Monsanto as Roundup Ready® soybeans. Monsanto's Roundup Ready® seed biotechnology is protected under patents issued by the United States Patent Office, including the '605 Patent. This patent was issued and assigned to Monsanto prior to the events giving rise to this action.

Monsanto licenses the use of Roundup Ready® seed technology to farmers at the retail marketing level. The required statutory notice that Roundup Ready® biotechnology is patented is placed on the labeling of all bags containing Roundup Ready® seed. In particular, each bag of Roundup Ready® seed is marked with notice of at least the '605 Patent. A 2003 licensing agreement (the "Agreement") was executed by and/or on behalf of defendant Vanderhoof.

Under the terms of Monsanto's licensing system, through which Monsanto's patented Roundup Ready® crop seed technology is licensed, a purchaser is only authorized to use the seed for planting a commercial crop in a single growing season, and is prohibited from saving any of the crop produced from the purchased seed for planting or selling saved seed from the crop produced from the purchased seed, or otherwise supplying or transferring any seed produced from the purchased seed to anyone for planting. The only permissible use of the patent-protected seed is to market the crop derived therefrom as a commodity. During the 2004 and 2005 crop years, defendant planted saved, second-generation Roundup Ready® soybean seed harvested from a prior year's crop. Although defendant admits that during the 2004 crop year he knowingly planted Roundup Ready® soybean seeds, he denies that he knowingly did so in the 2005 crop year.

The Agreement defendant entered into with Monsanto states in part:

GENERAL TERMS:

> If Grower violates the terms of this Agreement, in addition to other remedies … Grower agrees to pay Monsanto and the licensed technology provider(s) their attorneys' fees and costs of enforcing this Agreement.

Pl. Ex. 5. Defendant admits that when he planted saved, second-generation Roundup Ready® soybean seed, he knew that the activity was prohibited and that Roundup Ready® soybean seed was patented. Vanderhoof Dep. at 96:20-97:7; Pl. Ex. 5.

**Discussion**

**Count I**: **Patent Infringement**

Monsanto first argues that it is entitled to summary judgment on Count I of its complaint. Monsanto contends that in order for Vanderhoof to be found liable under Count I, a two-step patent infringement analysis, consisting of claim interpretation and infringement analysis, must be conducted. According to Monsanto's, interpretation of the claims of the '605 Patent requires the Court to construe the allegedly infringed patent claims and establish their meaning and scope. Monsanto asserts there is no dispute that claims 1, 2, 4 and 5 of the '605 Patent are broadly directed to a chimeric gene, which is expressed in plant cells, comprising a promoter element, which can be a 35S promoter, and a structural sequence that is heterologous with respect to the promoter. Monsanto states that because there is no dispute as to the claim interpretation, the '605 Patent has already been found to be valid by the Federal Circuit Court of Appeals, and because it is undisputed that defendant planted saved second-generation Roundup Ready® soybean seed without a license, summary judgment is appropriate.

Monsanto asserts that defendant infringed the '605 Patent because the patent is valid, defendant used the patented biotechnology, and defendant's use was without authority. In order to establish the validity of the '605 Patent, Monsanto cites several Federal Circuit cases that have taken up the issue. See Monsanto Co. v. Scruggs, 459 F.3d 1328, 1336-38 (Fed. Cir. 2006); Monsanto

5

Co. v. McFarling, 363 F.3d 1336 (Fed. Cir. 2004). Monsanto cites the same cases for the proposition that planting soybean seed containing Monsanto's patented biotechnology is a "use" under 35 U.S.C. § 271(a). Monsanto argues that by planting Roundup Ready® soybean seeds in the 2004 and 2005 growing seasons, defendant infringed its patented biotechnology.

To establish that defendant did not have the authority to plant the seeds, Monsanto relies on the Agreement, which it alleges granted defendant authority to purchase soybean seed containing Monsanto's patented Roundup Ready® biotechnology from an authorized retailer. Monsanto contends that the Agreement granted defendant a license to plant seeds to produce a single commercial crop, and expressly prohibited him from planting saved, second-generation Roundup Ready® soybean seed. Monsanto also contends that defendant's use was beyond the valid terms of the Agreement, thus making it a patent violation. See General Talking Pictures Corp. v. Western Elec. Co., 305 U.S. 124, 126 (1938); Monsanto Co. v. McFarling, 302 F.3d 1291, 1298 (Fed. Cir. 2002).

Monsanto also asks the Court to find that defendant's alleged infringement of the '605 Patent in 2004 was willful. Monsanto alleges that defendant has admitted not only that he knew Roundup Ready® soybean seeds were patented, but also that his alleged unauthorized use of the seeds was prohibited under the terms of the Agreement. Monsanto argues that because defendant knowingly violated the Agreement, he had no objective reasonable basis to believe that his conduct was non-infringing. Monsanto therefore moves the Court to find that defendant's infringement of its '605 Patent was willful as a matter of law.

In response, defendant concedes that Monsanto has established that he infringed the '605 Patent, but argues that the infringement was not willful. Defendant contends that the factors to be considered when making a determination regarding willfulness include: whether the infringer

6

deliberately copied the ideas or designs of another; whether the infringer, after knowledge of the patent, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; the infringer's behavior as a party to the litigation; the infringer's size and financial condition; the closeness of the case; the duration of the infringer's misconduct; the remedial action taken by the infringer; the infringer's motivation for harm; and whether the infringer attempted to conceal its misconduct. See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1343 (Fed. Cir. 2004). According to defendant, most of these factors are unaddressed by Monsanto and favor defendant.

Monsanto replies that because defendant concedes that a case of patent infringement has been established, it is entitled to summary judgment on Count I. In addressing defendant's arguments regarding willfulness, Monsanto asserts that defendant's reliance on Knorr-Bremse is misplaced, because the factors discussed therein concern damages, and only become applicable after a determination that a willful infringement has occurred. Monsanto states that because they are not currently seeking a determination for the amount of enhanced damages, these factors are inapplicable.

Monsanto agrees with defendant's contention that a determination of willfulness is based upon consideration of the totality of the circumstances. Monsanto argues, however, that because defendant does not claim that he did not knowingly engage in any improper behavior, or that he had a good faith belief that his actions were justified, his conduct should be considered willful. Citing Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1109 (Fed. Cir. 1986), Monsanto argues that under the totality of the circumstances, willfulness exists if a patent infringer has not discharged his affirmative duty of exercising due care. Monsanto cites Central Soya Co., Inc. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1577 (Fed. Cir. 1983), for the proposition that a defendant can be found to have willfully

7

infringed upon a patent even if an attorney advises him prior to his action that his conduct will not constitute infringement.

Monsanto argues that unlike the defendant in Central Soya, Vanderhoof does not claim a lack of knowledge regarding his infringing conduct. Monsanto asserts that instead, defendant has admitted that he knowingly and unlawfully planted saved Roundup Ready® soybean seeds in 2004. Monsanto also points to the Agreement as further evidence that defendant knew the planting of saved, second-generation Roundup Ready® soybean seeds was prohibited, and that he agreed not to do so. Further, Monsanto argues that although defendant claims his planting of saved Roundup Ready® soybean seeds in 2005 was a mistake, once he discovered the mistake he did not destroy the soybean plants or treat them as conventional plants. Monsanto argues that instead, defendant sprayed the crop with a Roundup-like glyphosate herbicide to take advantage of their patent-protected biotechnology. Based on these allegations, Monsanto contends that the undisputed facts do not provide a basis whereby defendant's actions could be objectively interpreted to support a finding that he discharged his affirmative duty of care.

The use of a patented product without authority is patent infringement. 35 U.S.C. § 271(a). This section states:

> (a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

The meaning of this statute is clear on its face. Further, in cases construing the '605 patent, courts have consistently found that planting saved Roundup Ready® soybean seeds constitutes infringement of the patent. Monsanto Co. v. McFarling, 363 F.3d at 1343 (affirming district court's grant of summary judgment on the issue); Monsanto Co. v. Ralph, 382 F.3d 1374 (Fed. Cir. 2004); Monsanto

Co. v. Scruggs, 342 F.Supp.2d 584, 593-97 (N.D. Miss. 2004). In addition, defendant concedes that a case of patent infringement has been established.

The Court finds that Monsanto has established that defendant infringed the '605 Patent in 2004 and 2005. In deposition testimony defendant admits that he planted Roundup Ready® soybean seeds during both planting seasons. The Court also finds that defendant willfully infringed Monsanto's '605 Patent in 2004. With respect to the 2004 season, defendant stated, "The spring of 2004, I did plant Roundup Ready beans knowing it, because I was in a big bind. I did that. That I'll own up to, I'm sorry." Vanderhoof Dep. at 52:18-21. Based on this testimony, there is no triable question of fact, because defendant admits that he willfully planted the Roundup Ready® soybean seeds in 2004. These aspects of Monsanto's motion for summary judgment should therefore be granted.

The parties expend considerable time discussing whether defendant's infringement by planting Roundup Ready® seeds in 2005 was willful. Monsanto's motion for summary judgment, however, only addresses defendant's 2004 conduct.[1] Defendant raised the issue of willful infringement during the 2005 crop season in his response to the motion for summary judgment, and Monsanto addressed the 2005 conduct in their reply. Because Monsanto did not move for summary judgment on the issue of whether defendant's infringement in 2005 was willful, the Court does not issue a ruling on that point.

**Count IV: Breach Of Contract**

Monsanto also moves for judgment as a matter of law on its breach of contract claim in Count IV. Monsanto realleges that in 2003 defendant entered into the Agreement which allowed defendant to purchase and plant Roundup Ready® soybean seeds for that growing season only. According to

---

[1] See Mem. Supp. Monsanto's Mot. Summ. J. at 6, "4. Defendant's Infringement In 2004 Was Willful."

9

Monsanto, it is undisputed that defendant breached the Agreement by saving seeds from the 2003 growing season and planting them in the 2004 and 2005 growing seasons. Relying on Monsanto Co. v. McFarling, 363 F.3d at 1352, Monsanto argues that it is entitled to judgment as a matter of law on Count IV.

Monsanto also asserts that it is entitled to an award of attorney's fees and costs pursuant to the terms of the Agreement. Monsanto cites a portion of the Agreement which states:

> GENERAL TERMS:
> If Grower violates the terms of this Agreement, in addition to other remedies … Grower agrees to pay Monsanto and the licensed technology provider(s) their attorneys' fees and costs of enforcing this Agreement.

Pl. Ex. 5. Monsanto alleges that based on this provision, it is entitled to its fees and costs, and that courts routinely make such an award where there is a contractual provision for such payment. See United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, 834 F.2d 1533, 1548 (10th Cir. 1987); Pls. Ex. 6 at 12.

In response, defendant argues that although Monsanto has established a case of infringement, because the infringement was not willful, enhanced damages and attorneys' fees should not be awarded. Defendant asserts that such awards are not appropriate in this action because his conduct was not egregious and the contractual claim for attorneys' fees is based on a nonmutual and unconscionable clause in a contract of adhesion. See Surman v. Merrill, Lynch, Pierce, Fenner & Smith, 733 F.2d 59, 61 n.2 (8th Cir.1984). Defendant argues that because he cooperated fully in this action and admitted his breaching conduct, this conduct renders the attorneys' fees clause unconscionable.

Monsanto replies that defendant has failed to create a question of fact as to his breach of the Agreement because it is undisputed that he breached the Agreement's terms when he planted saved seed in 2004 and 2005. Monsanto states that there is no dispute such conduct amounts to a breach

of contract as a matter of law, citing Monsanto Co. v. McFarling, 363 F.3d at 1352 (affirming Judge Perry's grant of summary judgment to Monsanto on a breach of contract claim based on the same licensing agreement and similar conduct by the defendant).

Monsanto also argues that the Court should enforce the clause of the Agreement which entitles it to reimbursement for the fees and costs that have been and will be incurred in litigating this action. Monsanto asserts that the Federal Circuit has expressly rejected the argument that Monsanto's standard licensing agreement is a contract of adhesion. Monsanto Co. v. McFarling, 302 F.3d at 1295. Monsanto also cites other rulings in this district which have found that the Agreement is not a contract of adhesion. See Monsanto Co. v. Godfredson, 2000 WL 33952257, at *1 (E.D. Mo. Apr. 13, 2000); Monsanto Co. v. Dawson, 2000 WL 33952259, at *1 (E.D. Mo. Nov. 24, 2000); see also Monsanto Co. v. David, 448 F.Supp.2d 1088, 1094 (E.D.Mo. 2006) (awarding attorneys' fees under the Agreement).

Monsanto also argues that apart from these decisions, Missouri law is clear that the cost and fees provision of the Agreement is not an unconscionable clause in a contract of adhesion, citing Binkley v. Palmer, 10 S.W.3d 166, 171 (Mo. Ct. App. 1999) ("It has long been settled in Missouri that absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs.") Monsanto also argues that where the Court is enforcing a contractual provision authorizing attorneys' fees, fees are routinely awarded and the contract is enforced according to its terms. See Parks v. MBNA Am. Bank, 204 S.W.3d 305, 312 (Mo. Ct. App. 2006). Monsanto further asserts that defendant's conduct in this litigation and the amount of fees incurred in this action have no bearing on whether the fees and costs provision in the Agreement is enforceable or is an unconscionable clause in a contract of adhesion. Monsanto contends the Agreement is not a contract of adhesion because defendant was not forced to accept the

contract and could have sought other options. Finally, Monsanto states that even if the Court were to find the Agreement is a contract of adhesion, because it is not unconscionable, defendant is still liable for the costs and fees.

The Court finds that because defendant saved seeds from the 2003 growing season and planted them in 2004, and also planted saved second-generation seeds in 2005, he is liable for breach of the Agreement. Defendant voluntarily signed the Agreement, and in the Agreement, he agreed not to save seed. The Court rejects defendant's argument that the Agreement is a contract of adhesion. Under Missouri law, "An adhesion contract is a form contract created by the stronger of the contracting parties. It is offered on a 'take this or nothing' basis." Robin v. Blue Cross Hospital Service, Inc., 637 S.W.2d 695, 697 (Mo. 1982) (en banc) (citation omitted). The terms of the adhesion contract are imposed upon the weaker party, who has no choice but to conform because the weaker party cannot look elsewhere for more attractive contracts. Id. The soybeans offered for sale by Monsanto were not the only soybeans available on the market. This is evidenced by defendant's use of non-Roundup Ready® soybean seeds in other planting seasons, including 2004 and 2005. Further, defendant voluntarily signed the Agreement, in which he agreed not to save seed. The Court concludes that Monsanto is entitled to recover its full amount of legal fees and other costs of enforcing the Agreement.

**Conclusion**

For the foregoing reasons, Monsanto's motion for summary judgment on its patent infringement claims in Count I should be granted. Monsanto is also entitled to summary judgment on its claim in Count I that defendant's infringement in planting saved second-generation seed in 2004 was willful as a matter of law. Monsanto's motion for summary judgment as to defendant's liability

for breach of contract as claimed in Count IV should also be granted, and Monsanto is entitled to an award of its attorneys' fees and costs pursuant to the terms of the Agreement.

Accordingly,

**IT IS HEREBY ORDERED** that Monsanto's motion for summary judgment is **GRANTED**. [Doc. 26]

**IT IS FURTHER ORDERED** that Monsanto is entitled to recover its attorneys' fees and other costs of enforcing the Agreement.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 27th day of April, 2007.